JOHN L. ADAMS AND DANIEL KIMBALL *v.* ASA G. DUTTON.*

[In Chancery.]

*Principal and Surety.*

The orators were sureties on a note, and the defendant the payee. The principal attempted to induce the payee to accept his own note secured by a mortgage on a lot of land owned by him in lieu of his note with said sureties; and the payee took the mortgage into his possession, and agreed to exchange, if on examination he should find the title clear of encumbrance. On being informed by the town clerk that there was an undischarged mortgage on the land he refused to exchange, and returned the mortgage to the principal, although the surety requested him to hold it. It turned out afterwards that the land was clear. A bill having been brought to restrain the payee from collecting the note; *Held,* that the rule, that the voluntary surrender by a creditor of security pledged by the principal for the debt discharges the surety, does not apply, and that the bill should be dismissed.

BILL in equity praying that the defendant be restrained from collecting a promissory note. Heard on a master's report, March Term, 1884, POWERS, Chancellor. Bill dismissed.

It appeared, that the defendant was the owner of a $200 note, signed by one Orson Kimball as principal and the orators as sureties. The master found: "that the orators and Orson Kimball entered into some kind of an arrangement in relation to their business matters, a part of which was

* Heard, May Term, 1884.

that the said Orson should mortgage a lot of land he owned in Johnson, Vt., to the defendant and take up the $200 note in question and surrender the same to the orators. At this time the defendant held another note against the said Orson of about $30, which was nearly outlawed. The defendant was not a party to and had no knowledge of the arrangement aforesaid. On the 23d or 24th day of November, A. D. 1880, Orson Kimball, without any previous notice, came to the defendant's house in Calais aforesaid and brought a mortgage of the Johnson land and a note secured thereby of $250 and wanted the defendant to take this note and mortgage and deliver up to him the $30 note and the $200 note in question. The defendant informed Orson that if the Johnson land was free and clear from encumbrance he would take it; otherwise he would not. Then the said Orson gave the defendant the money to pay for recording, and asked him to send the mortgage to the town clerk of Johnson, and have him examine the title and write the defendant. This the defendant did. Meanwhile the defendant held all the papers to await the answer of the town clerk aforesaid. The defendant received in due course of mail an answer from the town clerk of Johnson, dated December 8, 1880, enclosing the mortgage deed duly recorded, from which communication the defendant learned there was an undischarged mortgage on the premises prior to the mortgage to him. (This letter is returned herewith and marked defendant's Exhibit No. 1.) On the 25th day of December, 1880, said Orson was again at defendant's house, and the defendant, not having seen him since the papers were left with him, then showed him Exhibit No. 1 aforesaid and informed him he could not and should not accept the mortgage for the other note, and requested him to take them back; but Orson desired to have them remain in defendant's hands for a time and see if the old mortgage could not be discharged and the arrangement carried out. The defendant consented to retain the papers subject to the call of the said Orson, the defendant having no interest in them; and they called two witnesses, to whom the whole circumstances were explained, that the notes represented but one indebtedness, and that if the encumbrance was removed the defendant was to take the $250 note and mortgage and give up the others; meanwhile the defendant had no interest in

the note and mortgage aforesaid. The orator Kimball at some time after this inquired of Orson as to the $200 note being given up in accordance with the arrangement, and was informed by Orson of the reasons aforesaid why defendant would not accept the notes and mortgage and give up the $200 note.

"The last day of March, 1881, the orator Kimball called at the defendant's house and at that time saw the letter (defendant's Exhibit No. 1), and afterwards went to a neighbor of defendant, one Albert George, and in Mr. George's presence the defendant told Daniel that he did not hold or own the Johnson mortgage or have anything to do with it, and gave the reasons and told him of the arrangement with Orson aforesaid.

"One Jennings had a mortgage on the home farm of Orson Kimball and the orators were desirous of having the mortgage foreclosed. On or about the 13th day of August, 1881, the orator Kimball and a son of the orator Adams came to Montpelier to consult counsel and to have the foreclosure of the Jennings mortgage set in motion. They saw the defendant that day on the street, and, in the presence of Adams, Kimball inquired of defendant whether he had the Johnson mortgage, and the defendant informing him it was still in his possession, the orator Kimball said to defendant: 'You keep that Johnson mortgage for us.' The defendant answered that, 'The mortgage is not mine, and when Orson demands it he will have it.' Kimball then said that his counsel told him to tell the defendant to keep that mortgage for the orators." * * * *

"I find the old mortgage on the Johnson land was paid in full, though not discharged of record; and that it was good security for the amount of the orators' claim against Orson Kimball on the $200 note, if they had to pay it. But the defendant had no knowledge of this fact of payment of the mortgage aforesaid. I do not find that the defendant has in any way hindered or impeded the orators in the matter of the Johnson land except as heretofore stated; but I do find that the orators had knowledge soon after Christmas, 1880, that the defendant had refused to accept the mortgage of the land aforesaid, and could have secured any debt against the said Orson Kimball to the extent of his interest in that land up to the time he mortgaged it to Mrs. Morill" [August 17, 1881].

Adams v. Dutton.

It further appeared that the said Orson in October, 1881, secured the defendant for the $50 in the $250 note, and the defendant discharged the mortgage and sent it with the $250 note to said Orson; that defendant knew the orators wanted the security on the Johnson land, and that said Orson was insolvent; that the defendant had commenced a suit on the $200 note against the orators; and that said suit was enjoined by this proceeding.

*S. C. Shurtleff*, for the plaintiff.

The master's report finds that the defendant did not know of the agreement between the sureties and Orson Kimball; but did know before he gave up and discharged this mortgage, that the orators claimed the benefit of it in case they had to pay the note; so that if the facts warrant a relief to the orators the defendant cannot plead good faith even; for he was given notice, and upon proper inquiry could have known all the facts that the master has found before he acted in the premises.

When the relation of principal and surety exists, and is known to the creditor, their duties and liabilities do not depend upon any contract, but are purely a question of equity upon the facts.

The question in the case is, Did the debtor place the mortgage of the Johnson land in such a situation that it could have been enforced against him on his failure to otherwise pay the debt?

If so, then the orators are entitled to relief; for they are entitled to the benefit of all securities pledged for the debt, whether done at the time the debt was created or at any subsequent time. *Baker* v. *Briggs*, 8 Pick. 122 ; Jones Pledges, s. 515; *American Bank* v. *Baker*, 4 Met. 164; *Guild* v. *Butler*, 127 Mass. 386; *Chester* v. *Kinston Bank*, 16 N. Y. 336; *N. H. Savings Bank* v. *Colcord*, 15 N. H. 119.

In our own State this doctrine is fully established. *Strong* v. *Wooster*, 6 Vt. 536; *McCollum* v. *Hinkley*, 9 Vt. 143;

Adams *v.* Dutton.

*Hickok* v. *Bank,* 35 Vt. 476; *Hurd* v. *Spencer,* 40 Vt. 581; *Austin* v. *Belknap,* 54 Vt. 495.

*J. P. Lamson,* for the defendant.

The defendant did no act by which the orators suffered. They were not released from the note. 15 Vt. 252; Brandt Sur. pp. 503–5.

The opinion of the court was delivered by

ROWELL, J. The orators' law is sound, but the facts do not bring their case within it. The defendant never held the mortgage on the Johnson land as security for the $200 note. There never was any talk between him and Orson Kimball that he should so hold it, but only that he should take it and *give up* said note, which he never did.

It is clear that the decree was right, and it is affirmed, and cause remanded.